IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| CARY PARKER, as Personal Representative of the Estate of Vernon Lee Parker, Jr., <br><br> Plaintiff, <br><br> vs. <br><br> TRANSPORT LEASING/CONTRACT, INC. and YASIYM BRYANT BONNER, <br><br> Defendant. | CASE NO.: 4:22-cv-00138-JD <br><br><br> **ORDER AND OPINION ON TRANSPORT LEASING/CONTRACT INC.'S OMNIBUS MOTION IN LIMINE** |

Before the Court is Defendant Transport Leasing/Contract Inc.'s omnibus Motion in Limine. (DE 170.) Plaintiff Cary Parker, as Personal Representative of the Estate of Vernon Lee Parker, Jr, has responded in opposition (DE 182), and Transport Leasing/Contract Inc. has replied (DE 185). After reviewing these materials and applying the governing standards for both motions in limine and expert testimony, the Court grants the motion in part and denies it in part for the reasons stated below.

## I. BACKGROUND

**Factual and Procedural Background**

This wrongful-death-and-survival action arises from a May 21, 2020, collision on U.S. Highway 15 in Marlboro County, South Carolina, in which a tractor–trailer operated by Defendant Yasiym Bryant Bonner ("Bonner") crossed the center line and

1

struck the vehicle driven by Vernon Lee Parker, Jr. ("Decedent"), resulting in Decedent's death. (DE 1.)

On September 28, 2023, the Court entered default judgment against Bonner on Plaintiff's negligence and negligence *per se* claims, accepting the well-pleaded facts of the complaint as true and finding Bonner liable on those claims. (DE 90.)

On June 18, 2024, the Court granted Plaintiff summary judgment on his negligence and negligence *per se* claims against Defendant Transport Leasing/Contract, Inc. ("TLC"), on a vicarious liability theory, finding that Bonner was an employee of TLC and was acting within the scope of his employment at the time of the accident. (DE 116.) The Court simultaneously granted TLC summary judgment on Plaintiff's direct liability claims for negligent hiring, training, supervision, and retention. (*Id.*)

Earlier, the Court granted Plaintiff's motion to bifurcate this action from the third-party indemnity and coverage claims so that Plaintiff's claims against TLC and Bonner would proceed separately for discovery and trial. (DE 54.)

On March 25, 2025, the Court entered a text order finding that Plaintiff made a prima facie showing of entitlement to punitive damages and directed TLC to produce financial information relevant to punitive damages. (DE 137.) The Court also denied TLC's motion for judgment on the pleadings but preserved TLC's affirmative defense of accord-and-satisfaction for trial. (DE 153.)

On August 8, 2025, TLC filed its omnibus Motions in Limine seeking to exclude twenty-two categories of evidence and argument. (DE 170.) Plaintiff responded in

opposition on August 22, 2025. (DE 182.) TLC filed a reply on August 29, 2025. (DE 185.)

## II.     LEGAL STANDARD

### A.     Motions in Limine

"Questions of trial management are quintessentially the province of the district courts." *United States v. Smith*, 452 F.3d 323, 332 (4th Cir. courts." "The purpose of a motion in limine is to allow a court to rule on *evidentiary* issues in advance of trial in order to avoid delay, ensure an even-handed and expeditious trial, and focus the issues the jury will consider." *United States v. Verges*, No. 1:13-cr-222-JCC, 2014 U.S. Dist. LEXIS 17969, 2014 WL 559573, at *2 (E.D. Va. Feb. 12, 2014) (emphasis added). When ruling on a motion in limine, a federal district court exercises "wide discretion." *United States v. Aramony*, 88 F.3d 1369, 1377 (4th Cir. 1996) (quoting *United States v. Heyward*, 729 F.2d 297, 301 n. 2 (4th Cir. 1984)).

However, a motion in limine "should be granted only when the evidence is clearly inadmissible *on all potential grounds." Verges*, 2014 U.S. Dist. LEXIS 17969, 2014 WL 559573, at *3; *see also Fulton v. Nisbet*, C/A No. 2:15-4355-RMG, 2018 U.S. Dist. LEXIS 13342, 2018 WL 565265, at *1 (D.S.C. Jan. 25, 2018) (emphasis added). Courts routinely deny motions in limine that seek to exclude broad categories of evidence or that lack specificity. *United States ex rel. Lutz v. BlueWave Healthcare Consultants, Inc.*, No. 9:11-CV-1593-RMG, 2017 WL 11621327, at *1 (D.S.C. Nov. 16, 2017).

**B.     Rule 702 of the Federal Rules of Evidence**

District courts "must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579, 589 (1993). Rule 702 of the Federal Rules of Evidence was amended in response to *Daubert* and its progeny to provide:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. The proponent of an expert witness's testimony bears the burden of proving that such testimony meets the requirements of Rule 702 by a preponderance of evidence. *See Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001) (citing *Daubert*, 509 U.S. at 592 n. 10). As the text of the rule suggests, district courts have a "special obligation" as gatekeepers. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). This means that regardless of the content of the expert testimony, "a district court must ensure that the expert is qualified and that the expert's testimony is both relevant and reliable." *United States v. Smith*, 919 F.3d 825, 835 (4th Cir. 2019).

Beginning with qualifications, "[t]he test is whether, under the totality of the circumstances, the witness can be said to be qualified as an expert in a particular field through any one or more of the five bases enumerated in Rule 702—knowledge, skill, experience, training, or education." *Santos v. Posadas De Puerto Rico Assocs., Inc.*, 452 F.3d 59, 64 (1st Cir. 2006).

Turning to methodology, the court must consider "whether the reasoning or methodology underlying the testimony" is reliable. *Daubert*, 509 U.S at 592–93. Certain nonexclusive factors address the reliability of a particular theory or technique—whether the theory or technique:

(1)    can be and has been tested;

(2)    has been subjected to peer review and publication;

(3)    has a known or potential rate of error; and

(4)    has attained general acceptance in the pertinent scientific community.

*See id.* at 593–94. Of course, given the district court's role in all expert testimony, "some of *Daubert*'s questions can help to evaluate the reliability even of experience-based testimony." *Kumho Tire Co.*, 526 U.S. at 151. But in any case, which of these factors apply "depends upon the particular circumstances of the particular case at issue." *Id.* at 150. And importantly, the focus "must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595.

Finally, relevance is determined by ascertaining whether the testimony is sufficiently tied to the facts of the case such that it will aid the jury in resolving a factual dispute. *See id.* at 593; *see also* Rule 402, Fed. R. Evid.

That said, "the trial court's role as a gatekeeper is not intended to serve as a replacement for the adversary system, and consequently, the rejection of expert testimony is the exception rather than the rule." *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prod. Liab. Litig. (No II) MDL 2502*, 892 F.3d 624, 631 (4th Cir. 2018) (alteration omitted) (quoting another source).

## III.    DISCUSSION

Defendant's omnibus motion raises twenty-two requests to exclude categories of evidence and argument. (DE 170.) Many of these requests overlap or address related subject matter. For clarity and efficiency, rather than addressing each motion strictly in numerical order, the Court considers them by subject-matter grouping while making explicit reference to the corresponding motion numbers.[1] This approach enables the Court to resolve common issues consistently, avoid needless repetition, and ensure that each motion is addressed.

Consistent with the governing legal standards, the Court grants motions in limine only when the evidence is clearly inadmissible on all potential grounds. It addresses challenges to expert testimony under Rule 702 and Daubert by assessing qualifications, reliability, and relevance. Where evidentiary value and prejudice are better evaluated in the context of trial, or where expert criticisms go to weight rather than admissibility, the Court reserves final rulings for trial.

---

[1]     For brevity, the Court will hereafter refer to each motion in limine as "MIL."

## A.     Characterization of TLC (MIL Nos. 1–3)

Defendant first seeks to prohibit Plaintiff from describing TLC as a "motor carrier," "trucking company," "driver leasing company," or "staffing company," and from referring to Bonner as "driving for TLC." (DE 170 at 4–5.)

It is undisputed that TLC is not a federally regulated "motor carrier" as defined in the Federal Motor Carrier Safety Regulations. (DE 116 at 3.) Plaintiff concedes this point and does not intend to use that term. (DE 182 at 3.) Accordingly, TLC's motion is granted to the extent that Plaintiff may not characterize TLC as a "motor carrier."

However, the record reflects that TLC employs thousands of commercial truck drivers and contracts with motor carriers, such as All Star Logistics, to provide those drivers. (DE 116 at 2–4.) Terms such as "trucking company," "driver leasing company," or "staffing company" are not technical legal terms but ordinary descriptors, and their use is not misleading if tied to competent evidence. Plaintiff is entitled to argue, for example, that TLC employed Bonner and was driving in the course of that employment when the fatal collision occurred. (DE 116 at 13.) At the same time, TLC remains free to explain that it views itself as a professional employer organization ("PEO") and to distinguish its role from that of a motor carrier.

Accordingly, Defendant's MIL Nos. 1–3 are **GRANTED IN PART AND DENIED IN PART**. Plaintiff may not describe TLC as a "motor carrier," but may use other ordinary descriptors that are grounded in the evidence.

**B.      Independent Negligence of TLC (MIL No. 4)**

TLC next seeks to preclude Plaintiff from arguing or presenting evidence of negligent hiring, training, supervision, or retention. (DE 170 at 5.) This issue has already been decided. On summary judgment, the Court entered judgment in TLC's favor on all direct negligence theories, finding "Plaintiff has no evidence in the record to show that TLC knew of or should have known that Bonner's employment created an undue risk of harm to the public." (DE 116 at 14.) Plaintiff has stated he does not intend to reference these claims at trial. (DE 182 at 5.) Given Plaintiff's concession and since these claims have been dismissed, Plaintiff may not present argument or evidence suggesting that TLC was directly negligent in hiring, training, retaining, or supervising Bonner.

Accordingly, MIL No. 4 is **GRANTED**.

**C.      Accident Evidence and Bonner's Conduct (MIL Nos. 5–10, 16)**

**1.      *Speed of Bonner's Vehicle (MIL No. 5)***

TLC seeks to exclude evidence concerning Bonner's excessive speed. (DE 170 at 5–6.) Plaintiff opposes, arguing that such evidence is directly relevant to punitive damages. (DE 182 at 5.)

The Court agrees with Plaintiff. While Bonner's liability has been established by default (DE 90) and TLC's vicarious liability has been adjudicated (DE 116), Plaintiff must still prove entitlement to punitive damages under South Carolina law. The South Carolina Code provides that "[i]n any civil action where punitive damages are claimed, the plaintiff has the burden of proving such damages by clear and convincing evidence." S.C. Code Ann. § 15-33-135 (West, Westlaw through 2025 Act

No. 94). Punitive damages may be awarded only where the plaintiff demonstrates "by clear and convincing evidence" that "the defendant's misconduct was willful, wanton, or in reckless disregard of the plaintiff's rights." *See Mellen v. Lane*, 377 S.C. 261, 290, 659 S.E.2d 236, 251 (S.C. Ct. App. 2008) (citing *Taylor v. Medenica*, 324 S.C. 200, 220, 479 S.E.2d 35, 46 (1996)). Evidence of Bonner's speed is relevant to the degree of culpability and reprehensibility of his conduct. Any risk of prejudice does not substantially outweigh this probative value under Rule 403.

MIL No. 5 is, therefore, **DENIED**.

## 2.    *Prior Accidents or Citations (MIL No. 6)*

TLC seeks to exclude any reference to prior accidents, citations, or the driving conduct of Bonner. (DE 170 at 6.) Plaintiff argues that such evidence may be relevant to punitive damages, but acknowledges that admissibility depends on the trial context. (DE 182 at 6.)

The Court finds this sweeping request premature. Under South Carolina substantive law, punitive damages may be awarded only where Plaintiff proves by clear and convincing evidence that a defendant's misconduct was willful, wanton, or in reckless disregard of the plaintiff's rights. *See* S.C. Code Ann. § 15-33-135 (West, Westlaw through 2025 Act No. 94); *Taylor*, 324 S.C. at 220, 479 S.E.2d at 46; *Lister v. NationsBank of Delaware*, 329 S.C. 133, 149, 494 S.E.2d 449, 458 (S.C. Ct. App. 1997); *Mellen*, 377 S.C. at 290, 659 S.E.2d at 251. Under the applicable federal evidentiary standards, prior accidents or citations may, sometimes, be probative of recklessness—but such evidence also carries a risk of unfair prejudice and confusion.

*See* Rule 404(a)(1), (b)(1), Fed. R. Evid. In addition, broad pretrial evidentiary rulings may "seriously prejudice[] [a party's] ability to present its case," and courts are often wise to await the unfolding of evidence. *E.I. DuPont De Nemours & Co. v. Kolon Indus., Inc.*, 564 F. App'x 710, 715 (4th Cir. 2014) (per curiam).

Accordingly, MIL No. 6 is **DENIED WITHOUT PREJUDICE**.

### 3.    *Collision Photographs (MIL No. 7)*

TLC seeks to exclude photographs of the collision. (DE 170.) Plaintiff responds that pictures are routinely admitted in wrongful-death or survival cases and are relevant to damages and punitive damages. (DE 182 at 7–8.)

The Court agrees with Plaintiff. Photographs of the collision scene are relevant and probative of the severity of the crash, the circumstances of Bonner's conduct, and the resulting harm. Since the collision photos are not "clearly inadmissible on all potential grounds[,]" TLC has not met its burden. *Verges*, 2014 U.S. Dist. LEXIS 17969, 2014 WL 559573, at *3.

Accordingly, MIL No. 7 is **DENIED**.

### 4.    *Law Enforcement Materials (MIL No. 8)*

TLC seeks to exclude all police reports and related materials. (DE 170 at 7.) Plaintiff concedes that S.C. Code § 56-5-1290 (West, Westlaw through 2025 Act No. 94) prohibits the admission of collision reports as substantive evidence of negligence but contends that other materials—such as photographs and officer testimony regarding their observations—remain admissible. (DE 182 at 8–9.)

The Court agrees that TLC's request is overly broad. Evidence is not excludable at this stage unless it is "clearly inadmissible on all potential grounds." *Verges*, 2014 U.S. Dist. LEXIS 17969, 2014 WL 559573, at *3; *Fulton*, 2018 U.S. Dist. LEXIS 13342, 2018 WL 565265, at *1. The statute does not preclude law enforcement officers from testifying to their personal observations, nor does it bar them from using reports to refresh their recollection. What the statute forbids is the admission of the reports themselves to establish negligence or due care.

Accordingly, MIL No. 8 is **GRANTED IN PART AND DENIED IN PART**.

### 5.    *Testimony About How the Accident Occurred (MIL No. 9)*

TLC seeks to exclude testimony about how the accident occurred, arguing that liability is already established and this evidence would "confuse the issues" in the case. (DE 170 at 7–8.) Plaintiff responds that the facts surrounding the collision are necessary for the jury to assess punitive damages. (DE 182 at 9–10.)

The Court agrees with Plaintiff. Although liability is established, Plaintiff must still prove punitive damages by clear and convincing evidence—specifically, Plaintiff must prove willful, wanton, or reckless conduct. *See* S.C. Code Ann. § 15-33-135 (West, Westlaw through 2025 Act No. 94); *Taylor*, 324 S.C. at 220, 479 S.E.2d at 46; *Lister*, 329 S.C. at 149, 494 S.E.2d at 458; *Mellen*, 377 S.C. at 290, 659 S.E.2d at 251. It appears likely that the circumstances of the accident, including how Bonner operated his vehicle, are relevant to this inquiry. *See* Rule 401, Fed. R. Evid. Since this evidence is not clearly inadmissible at this stage, *see* Rule 403, Fed. R. Evid., TLC has not met its burden.

11

MIL No. 9 is **denied**.

### 6.    *Bonner's Driver Qualification File (MIL No. 10)*

TLC moves to exclude documents from Bonner's driver qualification file, citing South Carolina evidence law and arguing negligent hiring claims have been dismissed. (DE 170 at 8.) Plaintiff responds that certain documents, such as Bonner's driver representation agreement, remain relevant to punitive damages. (DE 182 at 10–12.)

The Court concludes that wholesale exclusion is not warranted. Certain documents may bear on Bonner's knowledge and culpability, but others may be irrelevant in light of the dismissal of independent negligence claims. The Court will rule on specific exhibits if offered at trial.

Therefore, MIL No. 10 is **DENIED WITHOUT PREJUDICE**.

### 7.    *Law Enforcement Witnesses (MIL No. 16)*

TLC moves to exclude testimony from law enforcement officers, including Trooper Grooms. (DE 170 at 14.) Plaintiff responds that law enforcement witnesses are competent to testify to their observations at the scene, the steps taken during their investigation, and to authenticate photographs. (DE 182 at 19–20.) Plaintiff further contends that such testimony is critical to satisfying the burden of proof for punitive damages under South Carolina substantive law.[2] (DE 182 at 19–20.)

---

[2]    In *Gamble v. Stevenson*, the South Carolina Supreme Court set forth the following non-exclusive list of factors for trial courts to employ in conducting post-trial review of punitive damages: (1) defendant's degree of culpability; (2) duration of the conduct; (3) defendant's awareness or concealment; (4) the existence of similar past conduct; (5) likelihood the award will deter the defendant or others; (6) whether the award is reasonably related to

The Court agrees that wholesale exclusion of law enforcement witnesses is unwarranted. Although Bonner's liability is established by default, Plaintiff bears the burden of proving punitive damages by clear and convincing evidence. S.C. Code Ann. § 15-33-135 (West, Westlaw through 2025 Act No. 94). As the South Carolina appellate courts have emphasized, punitive damages may be awarded only upon proof that the defendant's misconduct was willful, wanton, or in reckless disregard of the plaintiff's rights. *Taylor*, 324 S.C. at 220, 479 S.E.2d at 46; *Lister*, 329 S.C. at 149, 494 S.E.2d at 458; *Mellen*, 377 S.C. at 290, 659 S.E.2d at 251. To carry this burden, Plaintiff is entitled to present "competent evidence" concerning the culpability and reprehensibility of Bonner's conduct. *See Solley v. Navy Fed. Credit Union, Inc.*, 397 S.C. 192, 204, 723 S.E.2d 597, 603 (S.C. Ct. App. 2012).

As presented in TLC's motion, testimony from officers—such as Trooper Grooms—concerning their firsthand observations, contemporaneous investigative steps, and photographs taken at the scene. In this way it bears directly on Bonner's culpability, and thus, on the *Gamble* factors—including the degree of reprehensibility and the relationship between harm and deterrence. Such testimony is, therefore, relevant under Rules 401 and 402 of the Federal Rules of Evidence. Moreover, the Court rejects at this stage TLC's contention that this testimony is unduly prejudicial—evidence supporting a party's damages claim does not become unfairly prejudicial merely because it is adverse to the opposing party. .

---

the harm likely to result; (7) defendant's ability to pay. 305 S.C. 104, 111–12, 406 S.E.2d 350, 354 (1991).

That said, the scope of law enforcement testimony remains subject to the ordinary rules of evidence. Officers may testify to matters within their personal knowledge, including their sensory observations and the authenticity of photographs they captured. They may not offer opinions as to accident causation, fault, or reconstruction unless they are properly qualified as experts under Rule 702, which Plaintiff has not sought here.

Accordingly, MIL No. 16 is **GRANTED IN PART AND DENIED IN PART.** Law enforcement officers may testify to their personal knowledge and authenticate evidence relevant to punitive damages; however, they may not present expert opinions without proper qualification.

## D.    Expert Testimony (MIL Nos. 11–12)

### 1.    *Dr. Oliver Wood (MIL No. 11)*

TLC moves to exclude the testimony of Plaintiff's economist, Dr. Oliver Wood, arguing that his opinions lack meaningful conclusions, rely on improper methodology, and will not assist the jury.[3] (DE 170 at 8–11.) Plaintiff responds that Dr. Wood is a well-established economist who has testified in hundreds of cases in South Carolina courts, that his opinion regarding TLC's ability to pay punitive damages is directly relevant, and that any criticisms raised by TLC go to weight rather than admissibility. (DE 182 at 12–16.)

---

[3]    As TLC appears to note, the deadline in the operative scheduling order in this case for TLC to raise concerns under *Daubert* passed almost three months ago. (DE 131 ("All dispositive motions, *Daubert* motions . . . shall be filed on or before **June 30, 2025**.).)

14

The Court considers these arguments under Rule 702 and the standards articulated in *Daubert v. Merrell Dow Pharaceuticals, Inc.* and *Kumho Tire Co. v. Carmichael*, and their progeny.

### a.     Qualifications

There is no dispute that Dr. Wood is qualified to testify as an expert in economics. He holds a Ph.D. in economics, has testified in over 400 matters since 2010, and has been admitted as an expert in federal and state courts throughout South Carolina. (DE 182 at 13–14.) His experience in analyzing financial statements, projecting damages, and opining on corporate ability to pay punitive damages satisfies Rule 702(a).

### b.     Reliability and Methodology

TLC contends that Dr. Wood's opinions are unreliable because he focused on net income rather than net worth, referenced AutoZone and other non-parties in his deposition, and purportedly displayed a "limited understanding" of TLC's business. (DE 170 at 9–11.) The Court disagrees.

First, the choice between net worth and net income as a measure of financial condition is a matter of professional judgment. South Carolina courts have long recognized that "net worth alone may not always be illustrative of a corporation's financial situation." *Bryant v. Waste Mgmt., Inc.*, 342 S.C. 159, 169–70, 536 S.E.2d 380, 386 (S.C. Ct. App. 2000). Dr. Wood's reliance on net income as a more accurate reflection of TLC's resources is within the scope of accepted practice. Any disagreement with his emphasis is properly explored through cross-examination.

Second, while Dr. Wood referenced AutoZone as an anecdotal example to illustrate why net worth may not be dispositive, the Court will not permit testimony concerning unrelated companies unless a proper foundation is established for relevance. Similarly, Dr. Wood may not base his opinions on financial statements of non-parties, such as TLC's parent company, absent a showing that those statements are consolidated with TLC's own financials. *See Sardis v. Overhead Door Corp.*, 10 F.4th 268, 281 (4th Cir. 2021) (excluding expert opinions untethered to the record).

Finally, the record reflects that Dr. Wood's opinions are based on TLC's financial statements obtained in discovery and analyzed using standard economic tools. (DE 182 at 12–15.) His methodology—assessing income, profits, and cash flow—is acceptable under Rule 702(b)–(d).

### c.    Relevance and Fit

Dr. Wood's testimony plainly is relevant. A defendant's ability to pay is one of the eight *Gamble* factors a trial court must consider in reviewing punitive damages. *Gamble*, 305 S.C. at 111–12, 406 S.E.2d at 354. TLC itself acknowledges that Dr. Wood's core opinion is that "TLC is financially able to pay an amount in punitive damages." (DE 170 at 9.) This testimony will assist the jury in assessing punitive damages under South Carolina substantive law.

The Court emphasizes, however, that Dr. Wood may not suggest a specific dollar figure for punitive damages, as doing so would invade the jury's province. *See Cock-N-Bull Steak House, Inc. v. Generali Ins. Co.*, 321 S.C. 1, 8, 466 S.E.2d 727, 731 (1996).

16

### d.     Updating Requirement

To ensure that his testimony remains based on "sufficient facts or data," Rule 702(b), Fed. R. Evid., Plaintiff shall supplement Dr. Wood's analysis, consistent with Rule 26(e), to incorporate TLC's most recent financial disclosures produced in discovery.[4] *See Mincey v. Se. Farm Equip. Co.*, 2025 WL 2450913, at \*14 (D.S.C. Aug. 26, 2025) (requiring plaintiffs' experts to serve revised damages calculations to conform to updated medical testimony).

### e.     Conclusion

Accordingly, MIL No. 11 is **DENIED.** Dr. Wood may testify concerning TLC's financial condition and ability to pay punitive damages. He may not (1) propose a specific punitive damages figure, (2) offer opinions outside his expertise, such as corporate governance or executive compensation, or (3) reference unrelated companies or non-party financial statements absent a proper foundation. Plaintiff shall update Dr. Wood's analysis to reflect TLC's most current financial information. TLC's objections go to the weight, not the admissibility, of his testimony.

### 2.     *Bryan Miller and Kendrick Richardson (MIL No. 12)*

TLC seeks to exclude Bryan Miller and Kendrick Richardson, previously identified by Plaintiff as experts on accident reconstruction. The Court already excluded them as expert witnesses by order dated June 26, 2024, due to Plaintiff's

---

[4]     "Blind adherence to data of unknown origin does not suffice in federal court." *Bruno v. Bozzuto's, Inc.*, 311 F.R.D. 124, 144 (M.D. Pa. 2015). Accordingly, while Dr. Wood may rely on TLC's financial statements and consolidated records produced in discovery, his opinions must reflect "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

failure to disclose them timely under Rule 26 of the Federal Rules of Civil Procedure. (DE 120.) Plaintiff now states that it intends to call them as fact witnesses to authenticate the "black box" event data recorder ("EDR") and the .pdf report it generated. (DE 182 at 16–18.)

The Court will hold Plaintiff to its prior concession and this Court's prior ruling. Miller and Richardson are excluded as experts. However, consistent with decisions permitting lay testimony on mechanical data extraction, they may testify as fact witnesses to the limited extent of authenticating the process of downloading data and generating a report. They may not offer opinions interpreting the data, reconstructing the accident, or explaining engineering concepts. *See United States v. Chavez-Lopez*, 767 F. App'x 431, 433–34 (4th Cir. 2019).

Accordingly, MIL No. 12 is **GRANTED IN PART AND DENIED IN PART**. Miller and Richardson may not testify as experts, but they may testify as fact witnesses to authenticate the EDR data and the resulting report.

### E.    Damages Evidence (MIL Nos. 13–15, 17–18, 20, 22)

Several of TLC's motions concern categories of damages, evidence, or witnesses that Plaintiff has since withdrawn or limited.

- **Presumption of Loss of Companionship by adult siblings and damages for family members other than siblings (MIL Nos. 13–14):** Although Plaintiff concedes TLC's position (DE 182 at 18–19), the Court finds no basis to grant a motion that merely seeks to compel Plaintiff to comply with existing court rules and governing law. *See, e.g., Wren v. Erie Ins. Co.*, No. 5:16-CV-190, 2017 WL 11180254, at *3 (N.D.W. Va. Dec. 21,

18

2017) (noting that several district courts have denied similar motions on this ground). The applicable legal authorities—including the Federal Rules of Evidence, the Federal Rules of Civil Procedure, this District's Local Rules, and relevant case law—already establish the parameters of permissible conduct at trial, and counsel is expected to adhere to them. Should an issue arise during trial, the Court will address it upon a proper and timely objection. Accordingly, MIL Nos. 13–14 are **DENIED WITHOUT PREJUDICE**.

- **Selena Douglas (MIL No. 15):** Plaintiff confirms it does not intend to call Ms. Douglas. (DE 182 at 19.) This motion is **GRANTED**.

- **Coroner and EMS witnesses (MIL Nos. 17–18):** Plaintiff confirms it does not intend to call representatives from the coroner's office or EMS. (DE 182 at 19.) These motions are **GRANTED**.

- **Other accidents involving TLC employees (MIL No. 20):** Plaintiff concedes it does not intend to offer such evidence unless Defendant "opens the door." (DE 182 at 27.) This motion is **GRANTED**.

- **Settlement funds (MIL No. 22):** Plaintiff agrees it will not deny receipt of funds from Canal Insurance under the Covenant Not to Execute, which expressly states it is not an accord and satisfaction. (DE 182 at 28.) This motion is **GRANTED**.

**F.     Punitive Damages (MIL No. 19)**

TLC seeks to bar Plaintiff from presenting punitive damages to the jury, arguing that Bonner's liability has been discharged by the Covenant Not to Execute and that punitive damages are inappropriate on a purely vicarious liability theory. (DE 170 at 17–18; DE 185 at 9–10.)

This Court has held that Plaintiff made a prima facie showing of entitlement to punitive damages. (DE 137.) South Carolina law provides that punitive damages may be awarded in a civil case only where the plaintiff proves by clear and convincing evidence that the defendant's misconduct was willful, wanton, or in reckless disregard of the plaintiff's rights. *See* S.C. Code Ann. § 15-33-135 (West, Westlaw through 2025 Act No. 94); *Taylor*, 324 S.C. at 220, 479 S.E.2d at 46; *Lister*, 329 S.C. at 149, 494 S.E.2d at 458; *Mellen*, 377 S.C. at 290, 659 S.E.2d at 251. This rule may apply to employers who are held vicariously liable for the torts committed by their employees within the scope of their employment, at least in some circumstances. *See Austin v. Specialty Transp. Servs., Inc.*, 594 S.E.2d 867, 875 (S.C. Ct. App. 2004) (where liable employee *and the* employer defaults); *see also Riser v. S. Ry. Co.*, 67 S.C. 419, 46 S.E. 47, 49 (1903) (finding error in instructing jury that "authoriz[ation], direct[ion], participat[ion] [ ], or ratifi[cation] [of]" the tort by employer required for punitive damages in vicarious-liability case).

The issues raised by TLC pertain to its accord-and-satisfaction defense, which remains preserved for trial, rather than to a categorical exclusion of punitive

damages evidence. Plaintiff may present admissible evidence bearing on Bonner's conduct and TLC's financial condition, subject to the ordinary rules of evidence.

MIL No. 19 is **DENIED**.

## G. Discovery and Disclosure Issues (MIL No. 21)

Finally, TLC seeks to exclude documents Plaintiff produced in August 2025, after the discovery deadline, including FOIA documents from the South Carolina Department of Consumer Affairs. (DE 170 at 18–19; DE 185 at 11.) Plaintiff responds that TLC itself authored these documents, which were already in TLC's possession, and were produced as soon as counsel became aware of the oversight. (DE 182, pp. 27–28.)

The Court finds that exclusion is not warranted. While the documents were produced late, they originated from TLC and relate to TLC's own regulatory filings. TLC cannot claim surprise or prejudice from documents it created. The appropriate remedy is to permit TLC to raise objections at trial under Rule 403 if particular documents are cumulative or misleading.

Accordingly, MIL No. 21 is **DENIED**.

## IV. CONCLUSION

For the reasons above, Defendant's Omnibus Motions in Limine (DE 170) are

**GRANTED IN PART, DENIED IN PART, and RESERVED IN PART** as follows:

1. Motion to preclude reference to TLC as a motor carrier or trucking company – **GRANTED IN PART AND DENIED IN PART.** Plaintiff may not describe TLC as a "motor carrier" but may use other ordinary descriptors grounded in evidence.

2. Motion to preclude reference to Bonner "driving for TLC" – **DENIED.** Plaintiff may use this description consistent with the Court's prior finding that Bonner was acting in the scope of his employment with TLC.

3. Motion to preclude reference to TLC as a staffing or leasing company – **DENIED.** Plaintiff may use descriptors supported by evidence; TLC may clarify its PEO status.

4. Motion to preclude evidence of negligent hiring, training, supervision, or retention – **GRANTED.**

5. Motion to preclude evidence of Bonner's speed – **DENIED.** Evidence of speed is admissible as probative of punitive damages under section 15-33-135 of the South Carolina statutes and related case law.

6. Motion to preclude evidence of Bonner's prior accidents, citations, or history – **Denied without prejudice,** as such evidence is probative of punitive damages under section 15-33-135 of the South Carolina statutes and related case law.

7. Motion to preclude collision photographs – **DENIED,** subject to the Federal Rules of Evidence at trial.

8. Motion to preclude law enforcement reports and materials – **GRANTED IN PART AND DENIED IN PART**. Reports are inadmissible to prove negligence or due care, but may refresh recollection; officers may testify to their observations and photographs.

9. Motion to preclude testimony about how the accident occurred – **DENIED.** Testimony is admissible to establish punitive damages under section 15-33-135 of the South Carolina statutes and related case law, subject to the Federal Rules of Evidence at trial.

10. Motion to preclude documents from Bonner's driver qualification file – **DENIED WITHOUT PREJUDICE,** and subject to specific rulings at trial.

11. Motion to exclude Dr. Oliver Wood – **DENIED.** Dr. Wood may testify as an economist concerning TLC's financial condition and ability to pay punitive damages, subject to the limitations set forth herein (he may not suggest a specific dollar figure, offer opinions outside his expertise, or rely on non-party financial data without foundation; Plaintiff shall also supplement his analysis with TLC's most current financial information).

12. Motion to exclude Bryan Miller and Kendrick Richardson – **GRANTED IN PART AND DENIED IN PART.** Excluded as experts; may testify as fact witnesses solely to authenticate black box data.

22

13. Motion to preclude argument or evidence of presumption of loss of companionship damages for siblings – **DENIED WITHOUT PREJUDICE.**

14. Motion to preclude argument or evidence of damages for family members other than siblings – **DENIED WITHOUT PREJUDICE.**

15. Motion to exclude testimony of Selena Douglas – **GRANTED** (withdrawn by Plaintiff).

16. Motion to exclude law enforcement witnesses – **GRANTED IN PART AND DENIED IN PART.** Permitted to testify to observations and authenticate photos; no expert opinions absent qualification.

17. Motion to exclude coroner's office witnesses – **GRANTED** (withdrawn by Plaintiff).

18. Motion to exclude EMS witnesses – **GRANTED** (withdrawn by Plaintiff).

19. Motion to preclude punitive damages – **DENIED.** Plaintiff may present punitive damages under section 15-33-135 of the South Carolina statutes and related case law, subject to the Federal Rules of Evidence at trial.

20. Motion to preclude evidence of other accidents involving TLC employees – **GRANTED** (conceded by Plaintiff).

21. Motion to exclude Plaintiff's late-produced FOIA documents – **DENIED.** Admissibility subject to the Federal Rules of Evidence at trial.

22. Motion to preclude Plaintiff from denying receipt of Canal settlement funds – **GRANTED.**

IT IS SO ORDERED.

Joseph Dawson, III
United States District Judge

Florence, South Carolina
Sept. 3, 2025