**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION**

| | |
|---|---|
| CARY PARKER, as Personal Representative of the Estate of Vernon Lee Parker, Jr.,<br><br>Plaintiff,<br><br>vs.<br><br>TRANSPORT LEASING/CONTRACT, INC. and YASIYM BRYANT BONNER,<br><br>Defendant. | CASE NO.: 4:22-cv-00138-JD<br><br>**MEMORANDUM ORDER AND OPINION ON CROSS-MOTIONS FOR JUDGMENT AS A MATTER OF LAW** |

The Court previously ruled from the bench on the parties' cross-motions for judgment as a matter of law ("JMOL") under Rule 50 of the Federal Rules of Civil Procedure. Plaintiff Cary Parker, as Personal Representative of the Estate of Vernon Lee Parker, Jr ("Parker"), moved orally for JMOL, while Defendant Transport Leasing/Contract Inc. ("TLC") submitted both oral and written motions. The Court granted Parker's oral motion and denied TLC's motions. The Court now issues this Memorandum Order and Opinion to set forth the reasoning underlying its ruling.

## I.  BACKGROUND

### A.    Factual Background

On May 21, 2020, Parker's decedent, Vernon Lee Parker Jr., was killed in an automobile crash. The crash was caused by the negligence of Yasiym Bryant Bonner

1

("Bonner"), a co-defendant here and employee of TLC. (*See* DE 50 (Bonner's default); DE 116 (TLC's vicarious liability).)

On December 1, 2021, Parker entered into a covenant not to execute ("the Covenant") with several entities. (DE 25-1.) About one month later, in January 2022, Parker sued TLC, among others. (*See* Compl., DE 1.)

## B. Relevant Procedural Background

At trial on September 10, 2025, following Parker's case-in-chief, TLC orally moved for JMOL. TLC argued that it was entitled to judgment both on the issue of vicarious liability and on the issue of accord and satisfaction.

On September 11, 2025, the Court, ruling from the bench, denied TLC's motion for JMOL on vicarious liability.[1] The Court reserved ruling on the defense of accord-and-satisfaction until the close of TLC's case. After TLC concluded its presentation later that day, Parker moved for JMOL on the issue of accord and satisfaction. TLC renewed its own motion for JMOL, which the Court denied. The Court then granted Parker's motion for JMOL and stated that a written order would follow.

---

[1] The Court explained that its Order of June 2024 (DE 116) is the law of the case. TLC provided no basis to reconsider that decision, and declined to invoke Rule 59(e). That Rule permits reconsideration "only in very narrow circumstances." *Hill v. Braxton*, 277 F.3d 701, 708 (4th Cir. 2002). TLC pressed no "intervening change in controlling law" or "new evidence not available at trial[.]" *Collison v. Int'l Chm. Workers Union*, 34 F.3d 233, 236 (4th Cir. 1994) (quoting another source). Indeed, at trial, TLC contended *no* evidence is necessary—as it demonstrated by seeking judgment before it presented its case. TLC did not invoke either the "a clear error of law" or "prevent[ion] [of] manifest injustice" exceptions. *Id.* (quoting another source).

2

## II. LEGAL STANDARD

Rule 50 of the Federal Rules of Civil Procedure, in pertinent part, provides:

> [i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
>
> (A)   resolve the issue against the party; and
>
> (B)   grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

Rule 50(a), Fed. R. Civ. P. As with any request for judgment as a matter of law, such motion "may be granted only if, viewing the evidence in a light most favorable to the non-moving party . . . and drawing every legitimate inference in that party's favor, the only conclusion a reasonable jury could have reached is one in favor of the moving party." *Plyler v. Cox*, 145 F.4th 501, 508 (4th Cir. 2025).

## III. DISCUSSION

### A.   Applicable Law

South Carolina law applies to this dispute—this case was filed in South Carolina pursuant to this Court's diversity jurisdiction. (*See* Compl. ¶¶ 4, 9, DE 1 at 2 (allegations of citizenship and amount in controversy); *see also* Second Am. Ans. ¶¶ 4, 9, DE 15 at 2, 4 (admissions of these allegations).) And "a federal court sitting in

3

diversity borrows the forum State's choice-of-law rule."[2] *Cassirer v. Thyssen-Bornemisza Collection Found.*, 596 U.S. 107, 115 (2022).

In South Carolina, "[t]he application of the doctrine of accord and satisfaction requires the presence of two elements, to wit: the accord, consisting of the agreement between the parties *to settle a dispute*; and the satisfaction, which consists of the payment of the consideration expressed in the accord." *Mixson v. Rossiter*, 223 S.C. 47, 53, 74 S.E.2d 46, 48 (1953) (emphasis added).

In addition, "[t]he debtor must intend and make unmistakably clear that the payment tendered *fully satisfies* the creditor's demand." *Tremont Const. Co. v. Dunlap*, 310 S.C. 180, 182, 425 S.E.2d 792, 793 (S.C. Ct. App. 1992) (emphasis added). This is essential because "[w]ithout an agreement to discharge the obligation there can be no accord, and without an accord there can be no satisfaction." *Id.*

## B. The Covenant Not to Execute

TLC contends that JMOL is warranted because, in its view, the Covenant constituted an accord. (DE 210-1 at 9.) The Court, therefore, begins its analysis with a review of the South Carolina law governing covenants not to execute.

---

[2] Accord and satisfaction is a contract-law defense. South Carolina choice-of-law rules provide that "the *lex loci contractu* governs the construction and interpretation of contracts, while the law of the forum governs questions of remedy and procedure." *Jones v. Prudential Ins. Co.*, 210 S.C. 264, 271, 42 S.E.2d 331, 333 (1947). "As a general rule of law, the place of contracting is the place where the minds of the parties meet or the place where the final act occurred which made a binding contract." *O'Briant v. Daniel Const. Co.*, 279 S.C. 254, 256, 305 S.E.2d 241, 243 (1983). In this case, the Covenant is an integrated document that, on its face, was executed in South Carolina and notarized by South Carolina notaries. The Covenant expressly states in its caption that it was entered into in South Carolina. Accordingly, the Court applies South Carolina contract law.

4

1.   *South Carolina Law*

"Under South Carolina law, a covenant not to execute is one type of settlement agreement." *Wade v. Berkeley Cnty. ("Wade II")*, 348 S.C. 224, 228, 559 S.E.2d 586, 587 (2002). Importantly, however, "a covenant not to execute is *not a release*" even though "it is [ ] a settlement *between the parties to the agreement*."[3] *Id.* (emphases added).

A covenant not to execute has the narrow function of discharging—rather than releasing—a covenantee's right to enforce a judgment. As one influential treatise explains:

> because a covenant not to sue or a covenant not to execute, *unlike a release*, does not extinguish the entire obligation or cause of action, [it] *operates to discharge only those who are parties to or named within it*.

29 Williston on Contracts ("Williston") § 73:5 (4th ed. 2025), Westlaw (updated May 2025) (emphases added).

Under South Carolina law, the terms of a covenant not to execute are construed according to principles of contract law. *Progressive Max Ins. Co. v. Floating Caps, Inc.*, 405 S.C. 35, 46, 747 S.E.2d 178, 183 (2013) ("Covenants not to execute are treated as contracts and, as such, they are governed by general contract law."). Likewise, an accord is treated as a form of "settlement," *see Mixson*, 223 S.C. at 53, 74 S.E.2d at 48, and "settlement agreements are viewed as contracts" under South

---

[3] For clarity, the term "release" in this context refers to the "discharge of liability." *See Wade v. Berkeley Cnty. ("Wade I")*, 339 S.C. 513, 519, 529 S.E.2d 743, 746 (S.C. Ct. App. 2000) (en banc), *aff'd in part, rev'd in part*, 348 S.C. 224, 559 S.E.2d 586 (2002) (explaining that a "release is an agreement providing that a duty owed to the maker of the release is discharged immediately").

5

Carolina law. *Pee Dee Stores, Inc. v. Doyle*, 381 S.C. 234, 241, 672 S.E.2d 799, 802 (S.C. Ct. App. 2009).

"[T]he cardinal rule of contract interpretation is to ascertain and give legal effect to the parties' intentions as determined by the contract language." *Schulmeyer v. State Farm Fire & Cas. Co.*, 353 S.C. 491, 495, 579 S.E.2d 132, 134 (2003). Indeed, the intent of the parties determines whether a covenant not to execute is, in fact, a release. *Wade v. Berkeley Cnty. ("Wade I")*, 339 S.C. 513, 522, 529 S.E.2d 743, 748 (S.C. Ct. App. 2000) (en banc), *aff'd in part, rev'd in part*, 348 S.C. 224, 559 S.E.2d 586 (2002). These issues of "the intention of the parties and the meaning are gathered primarily from the contents of the writing itself, or, as otherwise stated, from the four corners of the instrument[] . . . ." *McPherson v. J. E. Sirrine & Co.*, 206 S.C. 183, 204, 33 S.E.2d 501, 509 (1945) (quoting another source).

The Court now turns to the terms of the Covenant[4] to determine its intended legal effect.

### 2.    *The Terms of the Covenant*

#### a.    **The Parties to the Covenant**

The Covenant contains recitals listing "Payees" as the following:

- Cary Parker, individually and as the personal representative of the estate of Vernon Lee Parker, Jr.;

- Selena Leann Douglas; and

---

[4]    For ease of reference, all citations to the Covenant are provided in parallel with the corresponding docket entry.

- Joanna Schmidt Williams.[5]

(Covenant Recitals, DE 25-1 at 1.) All these parties are signatories to the Covenant. (Covenant Signature Blocks, *id.* at 4–5.) Parker is the plaintiff in this suit. Next, the Covenant lists the "Payors" as the following:

- All Star Logistics, LLC;
- Yasiym Bryant Bonner;
- Transport Enterprise Leasing, LLC, and
- Canal Insurance Company.[6]

(Covenant Recitals, *id.* at 1.) Notably, TLC is not mentioned here—nor anywhere else in the Covenant.

### b.   The Consideration for the Covenant

The Covenant provides that the consideration for the Covenant was "the payment of the sum of **$1,000,000.00** by Canal on behalf of Payors," and that in exchange for this sum, "Payees agree, promise and covenant . . . that if they should obtain a judgment against Payors, Payees *will not execute* on said judgment . . . ." (Covenant § 4, *id.* at 2 (emphasis added).) The Covenant also provides that its "terms . . . are contractual and not merely recital[] . . . ." (Covenant § 7, DE 25-1 at 2–3.)

---

[5]   Ms. Douglas was another driver injured in the accident. Ms. Williams was a passenger in Plaintiff's decedent's vehicle at the time of the accident.

[6]   The Covenant also lists these parties' "heirs, executors, owners, officers, directors, agents, employees, legal representatives, successors and assigns" in the same recital. (Covenant Recitals, DE 25-1 at 1.) TLC did not introduce any facts supporting an inference that it fits anywhere in this string of categories.

### c. Other Terms of the Covenant

The Court notes several provisions of particular significance. First, the Covenant expressly limits its scope, affording the Payors only "freedom from the threat of execution upon any judgment that may be obtained against them . . . ." (Covenant § 11, *id.* at 3.) Most notably, it also provides that "Payees [ ] understand and agree that this instrument *is NOT a release or discharge of any claim or cause of action, or accord and satisfaction* and is only a Covenant Not To Execute . . . ." (Covenant § 11, *id.* at 2 (emphasis added).)

Second, the Covenant contains an integration clause. It states that "Payees declare and represent that Payors have made no promises, inducement, or agreement not expressed herein, that this Covenant . . . *contains the entire agreement* between the Payees and the Payors,[] . . . . (Covenant § 7, *id.* at 3 (emphasis added).)

Third, the Covenant underscores that additional litigation—including claims against the Payees—was contemplated. Namely, it provides: "[t]his Covenant . . . is not intended to limit or impair the right of the Payees to file suit, *against any entity*, in an effort to recover additional funds from any other insurance coverage or from any other source . . . ." (Covenant § 14, *id.* at 4 (emphasis added).)

### 3. *The Covenant's Terms Unambiguously Establish That the Parties Intended It To Be a Covenant Not to Execute*

Although the Court has until now refrained from definitively resolving this issue, neither TLC nor Parker identify any ambiguity—or any other genuine issue of fact—about the Covenant in their trial presentation. This remained the case even

8

after the Court permitted additional discovery to determine whether any factual dispute might exist.[7]

The Court finds the parties' intent to be sufficiently clear from the Covenant's terms. Where, as a matter of law, a contract is unambiguous and "capable of legal construction," *Auten v. Snipes*, 370 S.C. 664, 669, 636 S.E.2d 644, 647 (S.C. Ct. App. 2006), the "[i]nterpretation of [that] unambiguous agreement is for the court." *Pearson v. Church of God*, 325 S.C. 45, 54, 478 S.E.2d 849, 853 (1996).

To begin with, the parties declined to name TLC as a party to the Covenant.[8] The Covenant also states that it does not bar any Payee from bringing suit for "any claim or cause of action" against anyone—including nonparties such as TLC. (*See* Covenant § 11, *id.* at 2.) Even the Payors themselves remain subject to future litigation—as the Covenant expressly contemplates additional lawsuits against "any entity." (*See* Covenant § 14, *id.* at 4.) Finally, and most significantly, the Covenant reiterates—no fewer than three times—that the Payees' *only* undertaking is not to

---

[7] When this issue first arose, the Court sought to avoid prematurely short-circuiting the factfinding process. (*See* Text Order of March 25, 2025, DE 136; *see also* Text Order of July 17, 2025, DE 153.) It is now clear from the parties' trial presentations—and from TLC's concession at the close of Parker's case—that no factual disputes exist.

To be sure—TLC produced affidavits about the Covenant's meaning in its Rule 56(f) response. (*See* Eric Lynn Decl., DE 138.) But TLC has not attempted to identify, much less establish, any exception to South Carolina's parol evidence rule that would permit the use of affidavits "to contradict, vary, or explain the written instrument." *Redwend Ltd. P'ship v. Edwards*, 354 S.C. 459, 471, 581 S.E.2d 496, 502 (S.C. Ct. App. 2003).

[8] This fact may have implications. There is no evidence "that the contracting parties intend[ed] to directly benefit" TLC to render it a third-party beneficiary. *Helms Realty, Inc. v. Gibson-Wall Co.*, 363 S.C. 334, 340, 611 S.E.2d 485, 488 (2005). But even if the Court were to reach the question whether TLC may invoke the Covenant at all, the result would be the same.

9

execute on any judgment.[9] (*See id.*, Covenant § 4, DE 25-1 at 2; Covenant § 12, *id.* at 4.)

So as a matter of law, the Court finds the Covenant is a covenant not to execute. *McPherson*, 206 S.C. at 204, 33 S.E.2d at 509 (explaining that when meaning "is clear and unequivocal" such meaning "must be determined by its contents alone" (quoting another source)); *see Ackerman v. Travelers Indem. Co.*, 318 S.C. 137, 147, 456 S.E.2d 408, 413 (S.C. Ct. App. 1995). The Court turns now to the lynchpin of TLC's argument.

### 4. *TLC's Interpretation of South Carolina Law Is Novel*

TLC contends that, notwithstanding the Covenant's character as a covenant not to execute, it nonetheless operates to "release" TLC from vicarious liability as a matter of law. (*See* DE 210-1 at 4.) In advancing this argument, TLC relies primarily on *Andrade v. Johnson*, 345 S.C. 216, 546 S.E.2d 665 (S.C. Ct. App. 2001), *rev'd on other grounds*, 356 S.C. 238, 588 S.E.2d 588 (2003), along with several other authorities.

Before addressing these cases, the Court emphasizes that it is not an expositor of South Carolina law. Instead, this Court must "'respond conservatively when asked to discern governing principles of state law' and take care to avoid interpreting that law in a manner that 'has not been approved' by the Supreme Court of [South] Carolina." *Knibbs v. Momphard*, 30 F.4th 200, 213 (4th Cir. 2022).

---

[9] Indeed, the document's material terms track the covenant not to execute used in *Wade I. Compare* Covenant §§ 2, 4, 11, DE 25-1 at 2–4, *with Wade I,* 339 S.C. at 522–23, 529 S.E.2d at 748–49. In *Wade I*, the en banc South Carolina Court of Appeals considered the terms of the document in issue and concluded that the parties "intended" for it "to be a covenant not to execute rather than a settlement agreement, release, or covenant not to sue. *Id.*

10

In *Andrade*, a plaintiff sued a utility company and a contractor over the installation of a heating, ventilation, and air conditioning system. 345 S.C. at 221, 546 S.E.2d at 667–68. In relevant part, the plaintiff contended that the utility company was vicariously liable based on its purported endorsement of the contractor through a "quality dealer" program. *Id.* at 220–21, 546 S.E.2d at 667–68. Before trial, the plaintiff and the contractor entered a covenant not to sue. *Id.* at 221, 546 S.E.2d at 667. Later, the South Carolina circuit court granted the utility company's motion for summary judgment. *Id.* at 221, 546 S.E.2d at 667–68.

On appeal, the plaintiff argued, in relevant part, that the circuit court erred in dismissing the utility company. *Id.* That argument rested on a South Carolina statute providing that a settlement with one tortfeasor does not release others. *Andrade*, 345 S.C. at 223, 546 S.E.2d at 669. The court of appeals was unpersuaded. After a detailed review of South Carolina law, the court concluded that the statute did not apply and affirmed the circuit court, holding that the "covenant not to sue issued in favor of [the contractor], the agent, released [the utility company], the vicariously liable principal." *Id.* at 227, 546 S.E.2d at 670.

TLC relies heavily on both the reasoning and the holding of that decision to advance its accord-and-satisfaction defense. But neither is sufficient.

First, the facts are materially dissimilar. The South Carolina Court of Appeals was not confronted with an employment relationship, much less the co-employment relationship implicated by South Carolina's Professional Employer Organization Statute. (*See* DE 116 at 2–3 (citing S.C. Code Ann. § 40-68-30).) Nor did that court

11

consider a covenant not to execute that expressly disclaimed operating as a release of any party. (*See* Covenant § 11, DE 25-1 at 2; Covenant § 14, *id.* at 4.) Instead, the court of appeals held—consistent with the narrow record before it—that the covenant not to sue *in that case* released the vicariously liable principal.

Second, the court's reasoning does not resolve the issue presented here. The South Carolina Court of Appeals acknowledged that the covenant not to sue was not a release. *Andrade*, 345 S.C. at 222, 546 S.E.2d at 668. Yet rather than closely analyzing the terms of the covenant,[10] the court of appeals suggested that "[t]he most important factor" in determining whether a secondarily liable party is discharged "is the type of liability and the relationship *inter se* of the various allegedly liable parties rather than *the type* of document used to discharge liability." *Id.* at 224, 546 S.E.2d at 669 (emphasis added).

What that statement means is uncertain. The South Carolina Supreme Court has explained that a covenant not to sue and a covenant not to execute are "closely akin," *Poston by Poston v. Barnes*, 294 S.C. 261, 264, 363 S.E.2d 888, 890 (1987), but not identical—presumably because the terms of the instrument remain significant. *See Ackerman*, 318 S.C. at 147, 456 S.E.2d at 413 ("The intention of the parties governs in determining whether an instrument is a covenant not to execute or a release."). The upshot of TLC's argument is that this Court should assume the South Carolina Supreme Court would disregard the Covenant's plain terms. TLC offers no

---

[10] The Court's research could not locate a copy of this document in the South Carolina Public Index.

basis for that assumption. To adopt such a view would be to distort South Carolina law—something this Court has neither warrant nor authority to do.

TLC's remaining authorities are no more persuasive. In *Smith v. Tiffany*, for example, the South Carolina Supreme Court affirmed dismissal of a third-party complaint against a nonparty driver involved in an accident. 419 S.C. 548, 552, 799 S.E.2d 479, 481 (2017). The issue was whether a statute prohibiting contribution from settling defendants barred impleader of the nonparty driver, who had executed a covenant not to execute with the plaintiff. *Id.* The Court, without substantive analysis of the covenant itself, held that the contribution statute applied and affirmed the dismissal. *Id.* at 565, 799 S.E.2d at 488.

As TLC acknowledges (*see* DE 210-1 at 5), this is not a contribution case, and Bonner is not a nonparty driver. Also, *Tiffany* focused on questions of statutory and rule interpretation, rather than the effect of a covenant not to execute on vicarious liability. For these reasons, *Tiffany* provides no meaningful guidance here.[11]

Another case TLC points to is *Hanahan v. John Hancock Life Insurance*. In that case, the federal district court dealt with a motion to remand to South Carolina state court. 518 F. Supp. 2d 780, 783–84 (D.S.C. 2007). The only issue before that court was whether or not a document filed in South Carolina state court destroyed

---

[11] Even if the dicta in *Tiffany* were to be consulted for guidance, the covenant not to execute at issue there appears to differ from the Covenant in this case. The Court uses the term "appears" because the South Carolina Supreme Court did not quote the document in its opinion. A review of the South Carolina Public Index, however, suggests that the covenant may be found there. *See* Ex. A to Third-Party Def's Reqs. to Admit to Pl. at 1–3, *Smith v. Tiffany*, No. 2013CP100078 (Saluda Cnty C.P. June 19, 2014). The Court, however, need not and does not rely on that document here.

13

the court's diversity jurisdiction. *Id.* at 785. The document at issue was entitled "Covenant Not To Execute and Agreement" and named two of the purportedly diversity-destroying defendants. *Id.* at 783.

The district court—after quoting the document[12]—explained that "[i]t could not be clearer from the language of the Consent Order that Plaintiffs fully intended that agreement *to release the Rhetts from further liability in this action.*" *Id.* at 785 (emphasis added). This in hand, the court cited *Wade II* to conclude that the document bound the parties as a settlement agreement and denied the motion to remand. *Id.* at 786.

The Covenant in issue here is not a "release" according to its terms. (Covenant § 11, DE 25-1 at 2.) Nor, as the district court in *Hanahan* recognized, is that the effect of such a document generally in South Carolina. *See, e.g.*, *Wade II*, 348 S.C. at 228, 559 S.E.2d at 587. So even if *Hanahan* were considered persuasive authority—since

---

[12]     The portion from which the court quoted provided, in relevant part:

> Plaintiffs . . . bind themselves, their heirs and assigns *not to enforce by execution or otherwise any civil claim* against William M. Rhett, Jr. and Nancy Rhett arising out of the matters alleged in the above captioned action, including, but not limited to, claims asserted in the proposed [pleading]. It is expressly agreed and understood that the consideration for this Covenant Not to Execute shall in no way bar or affect the Plaintiffs in the continuance of this action against any person or entity *other than* William M. Rhett, Jr. and Nancy Rhett. The Plaintiffs' right to seek and enforce judgments by execution or otherwise against persons, entities, or insurers *other than* William M. Rhett, Jr. and Nancy Rhett is hereby expressly reserved by Plaintiffs. It is further expressly understood that payment of any sums by Rhett hereunder shall not be construed *as full compensation* for the damages alleged by the Plaintiffs.

Ex. I to Def's Resp. in Opp'n to Mot. to Remand at 4–5, *Hanahan v. John Hancock Life Ins. Co. (USA)*, No. 9:07-cv-02715 (D.S.C. Sept. 14, 2007), ECF No. 25-8 at 4–5 (emphases added).

14

it is not binding—this material difference in the operative documents renders it unhelpful to the task at hand.

*   *   *

This Court has determined that the Covenant unambiguously reflects the parties' intent to enter into a covenant not to execute. Accordingly, TLC's burden was to identify binding South Carolina authority holding that a covenant not to execute, with comparable terms, between a servant (Bonner) and a plaintiff operates as an accord discharging the master (TLC). TLC has not done so.[13] And so, TLC's motion for JMOL must, therefore, be denied on this ground.

## C. The "Satisfaction"—the Payment Under the Covenant

An accord-and-satisfaction defense requires both the existence of a settlement and a consummation of that settlement. *Tremont Const. Co.*, 310 S.C. at 182, 425 S.E.2d at 793. ("Just as important[] [as the existence of an accord], the creditor must accept payment with the intention that it shall operate as a satisfaction."). Because the predicate is absent, the Court need not address the issue of satisfaction to both grant Parker's motion for JMOL on TLC's accord-and-satisfaction defense and deny TLC's motion.

## IV. CONCLUSION

For the reasons above, the cross-motions for judgment as a matter of law filed by Plaintiff Cary Parker, as Personal Representative of the Estate of Vernon Lee

---

[13] TLC's argument about double recovery rings hollow because—as even Plaintiff conceded at trial—TLC would have been entitled to a setoff.

15

Parker, Jr, and Defendant Transport Leasing/Contract Inc. are **GRANTED** and **DENIED** as follows:

1. Parker's oral motion for judgment as a matter of law is **GRANTED** and

2. TLC's motion for judgment as a matter of law (DE 210) is **DENIED**.

**IT IS SO ORDERED**.

*[Signature]*
Joseph Dawson, III
United States District Judge

Florence, South Carolina
Sept. 18, 2025