IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| CARY PARKER, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF VERNON LEE PARKER, JR., | ) ) ) ) | CASE NO.: 4:22-cv-00138-JD |
| Plaintiff, | ) ) ) | **MEMORANDUM ORDER AND OPINION** |
| vs. | ) ) | |
| TRANSPORT LEASING/CONTRACT, INC., | ) ) ) | |
| Defendant. | ) ) ) | |

Before the Court is Plaintiff Cary Parker's Motion for a New Trial on Actual and Punitive Damages under Rule 59 of the Federal Rules of Civil Procedure. (DE 227.) Defendant Transport Leasing/Contract, Inc. ("TLC") filed a response (DE 228), and Plaintiff filed a reply (DE 229). The Court has considered the Parties' submissions, the trial record, the verdict, the jury instructions, and the governing authorities. For the reasons below, the motion is denied.

## I.    BACKGROUND

### A.    Prior Rulings and Trial

This wrongful death action arises from the May 21, 2020, collision that killed Vernon Lee Parker, Jr. Defendant Yasiym Bryant Bonner was operating a commercial vehicle in the course and scope of his employment when the collision occurred. Before trial, the Court resolved much of the case on summary judgment. As

1

relevant here, the Court determined that Bonner was negligent and negligent per se, that his conduct caused Mr. Parker's death, and that TLC was legally responsible for Bonner's conduct under respondeat superior. (DE 116.) The Court reads that ruling as resolving breach, causation of Mr. Parker's death, and TLC's vicarious responsibility; it did not determine whether the statutory beneficiaries themselves sustained compensable wrongful death loss or the amount of any such loss. Those matters remained for trial.

The case was tried to a jury from September 9 through September 11, 2025. Because Mr. Parker left no surviving spouse, children, or parents, the wrongful death claim was prosecuted for the benefit of his surviving siblings. The Court instructed the jury that Defendants' negligence was not for reconsideration and that Defendants had already been determined legally responsible for causing Mr. Parker's death. The Court also instructed that the jury's task was to determine the damages, if any, sustained by the statutory beneficiaries and whether Plaintiff had proved the culpability necessary for punitive damages. (DE 212 at 9-14.)

During trial, TLC also pursued an accord-and-satisfaction defense based on a Covenant Not to Execute entered in earlier litigation involving other parties. At the close of the evidence, the Court granted Plaintiff judgment as a matter of law on that defense. (DE 218.) The final charge expressly told the jury that the Covenant was not an accord and satisfaction and was not a defense to TLC. (DE 212.)

2

**B.    Verdict and Post-Trial Motion**

The verdict form asked the jury first to state the amount of damages, if any, to be awarded as a result of Mr. Parker's wrongful death. The jury entered $0. The form next asked whether Plaintiff had proved by clear and convincing evidence that Bonner acted in a reckless, willful, or wanton manner in the wrongful death. The jury answered "No." Because of that answer, the jury did not reach the question asking for the amount of punitive damages. (DE 214.)

Plaintiff now seeks a new trial on compensatory and punitive damages. He argues principally that the zero-dollar verdict cannot be reconciled with the Court's pretrial rulings and with the evidence of the siblings' relationship and grief; that at least nominal damages were required; and that the jury's rejection of punitive culpability is against the clear weight of the evidence in light of Bonner's testimony and the evidence concerning his driving. (DE 227; DE 229.) Plaintiff's motion also initially referred to the accord-and-satisfaction evidence and possible jury confusion. (DE 227 at 1, 15, 18–20.) In reply, however, Plaintiff clarified that he does not rely on TLC's presentation of that defense as an independent ground for a new trial but raises it principally to define the scope of any retrial. (DE 229 at 9–11.) TLC responds that no damages are presumed for adult siblings, that Plaintiff's proof of beneficiary-specific loss was insufficient, that the jury was free to reject the punitive damages theory, and that several of Plaintiff's post-trial contentions were not preserved before the jury was discharged. (DE 228.)

## II.     LEGAL STANDARD

Rule 59(a)(1)(A) permits a federal court, after a jury trial, to grant a new trial for any reason for which a new trial has historically been granted in an action at law in federal court. Fed. R. Civ. P. 59(a)(1)(A). In this Circuit, the court must set aside a verdict and grant a new trial if it concludes that the verdict is (1) against the clear weight of the evidence, (2) based on false evidence, or (3) will result in a miscarriage of justice, even though substantial evidence may exist that would defeat a motion for judgment as a matter of law. *Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors, Inc.*, 99 F.3d 587, 594 (4th Cir. 1996).

The Rule 59 inquiry is materially different from the Rule 50 inquiry. In deciding a new-trial motion, the court may weigh the evidence and consider witness credibility; it is not required to draw every inference in favor of the verdict winner. *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir. 1998). At the same time, the authority to weigh the evidence does not permit the court to replace a jury's reasonable assessment merely because the court might have reached a different result. In conducting that review, the court accords "due respect" to the jury's findings but exercises the independent weighing function assigned to the trial court under Rule 59. *See Aetna Cas. & Sur. Co. v. Yeatts*, 122 F.2d 350, 352–54 (4th Cir. 1941); *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir. 1998).

Because this is a diversity action, federal law supplies the Rule 59 procedure, while South Carolina law supplies the substantive rules governing the nature and

4

availability of damages. *See Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 437–39 (1996); *Konkel v. Bob Evans Farms Inc.*, 165 F.3d 275, 280 (4th Cir. 1999).

*Atlas Food* also distinguishes among factual determinations and the policy-laden determination of the amount of a punitive award. Liability for compensatory damages, liability for punitive damages, and the amount of compensatory damages are factual matters tested under Rule 59's first two prongs by comparing the verdict with the factual record. *Atlas Food*, 99 F.3d at 594. By contrast, when a jury actually fixes an amount of punitive damages, review of that amount principally invokes the miscarriage-of-justice prong. *Id.*

Here, the jury never reached an amount of punitive damages; it made the antecedent factual finding that Plaintiff had not proved reckless, willful, or wanton conduct by clear and convincing evidence. That finding therefore is reviewed as a factual determination under Rule 59.

### III.    DISCUSSION

**A.    Compensatory Damages**

**1.    The prior rulings did not establish compensable beneficiary loss.**

South Carolina's wrongful death statute permits recovery for the injury resulting from the death to the persons for whose benefit the action is brought. S.C. Code Ann. §§ 15-51-20, 15-51-40. The relevant injury is the loss sustained by the statutory beneficiaries, not an abstract valuation of the decedent's life. Recoverable components can include mental shock and suffering, wounded feelings, grief and sorrow, loss of companionship, and deprivation of the use and comfort of the

decedent's society. *See Burroughs v. Worsham*, 574 S.E.2d 215, 227 (S.C. Ct. App. 2002).

For adult siblings, however, South Carolina does not presume those losses merely from the family relationship. *See Nelson v. Charleston & W.C. Ry. Co.*, 98 S.E.2d 798, 802–03 (S.C. 1957). The relationship, association, feelings, and resulting loss must be shown by the evidence. *See id.* Thus the Court's earlier determination that Bonner negligently caused Mr. Parker's death and that TLC was vicariously responsible did not answer the separate question whether these statutory beneficiaries sustained compensable loss and, if so, in what amount. The final instructions reflected that division of issues: they told the jury both that Defendants were legally responsible for causing the death and that there was no presumption the siblings were entitled to damages; any award had to rest on proof of actual loss. (DE 212 at 10–11.)

That distinction also resolves Plaintiff's reliance on South Carolina decisions concerning a finding of liability followed by zero damages. In *Stevens v. Allen*, the jury found negligence liability in the full sense–including injury proximately caused by the negligence–yet awarded zero damages. 536 S.E.2d 663, 666 (S.C. 2000). The South Carolina Supreme Court held those findings inconsistent. *See id.* It also explained that if the jury instead finds the plaintiff failed to prove damages proximately caused by the negligence, the verdict should be for the defendant. *Id.* Upon timely objection to the inconsistent verdict presented there, the matter should be resubmitted; if requested, the jury should be instructed either to return a defense

6

verdict or to award at least nominal damages. *See id.* Here, unlike *in Stevens,* compensable injury to the wrongful death beneficiaries had not been established before submission. The jury's zero-dollar answer can, therefore, be reconciled with the prior rulings as a determination that Plaintiff failed to prove that remaining loss.

More recent South Carolina authority reinforces that distinction. In *Pratt v. Amisub of SC, Inc.,* the jury found that the defendants' breach proximately caused the decedent's injuries and awarded damages on survival and loss-of-consortium claims but left the wrongful death damages line blank. 912 S.E.2d 268, 275–76 (S.C. Ct. App. 2025), *cert. dismissed* as improvidently granted, Op. No. 28318 (S.C. Mar. 4, 2026). The Court of Appeals held the verdict reconcilable and later explained that, if a claim lacked the damages element, leaving the damages line blank was the proper way to convey that finding. *Id.* at 281. *Pratt* thus confirms that a wrongful death claim may fail on its damages element even though breach and proximate cause have been found. That principle fits the division of issues submitted here.

*Page v. Crisp* does not require a different result; there, liability on the relevant claim was admitted, and the plaintiff presented uncontested evidence of his own consortium loss, with no identified reason to discredit it. 399 S.E.2d 161, 162 (S.C. Ct. App. 1990). As the court stated, when liability is admitted, a plaintiff is entitled to an award unless proof completely fails and that uncontradicted testimony should not simply be disregarded without a reason. *Id.* Under the posture of this case, however, the existence of compensable beneficiary loss remained unresolved, and the record supplied grounds on which the weight of Plaintiff's proof could be discounted.

The Court, therefore, does not read *Page* as converting the pretrial negligence ruling into a conclusive determination that the siblings sustained compensable damages.

### 2.    The zero-dollar finding is not against the clear weight of the evidence.

The Court disagrees with TLC to the extent TLC characterizes the damages proof as nonexistent or as a complete failure. (DE 228 at 11–14.) Plaintiff presented affirmative evidence from which an award *could* have been made. Cary Parker testified about a close family relationship during childhood, including fishing, playing ball and board games, riding bicycles, and attending church. He testified that he and Vernon continued to fish as adults; that the siblings spent holidays together and gathered for cookouts and fish fries; and that he was shopping for a family cookout involving Vernon when he learned of the death. The evidence also included testimony concerning Vernon's willingness to help Cary and others, the siblings' maintenance of a roadside memorial, changes in where some siblings lived so they would not repeatedly pass the collision site, and changed family practices on holidays, including cemetery visits. (DE 227 at 4–7; DE 229 at 6–8.) This evidence was sufficient to permit an inference of grief, loss of companionship, and loss of society. *See Nelson*, 98 S.E.2d at 803.

But evidence sufficient to permit an award is not necessarily evidence so compelling that a contrary verdict is against the clear weight. Cary was the only beneficiary who testified. He was asked to speak not only to his own loss, but to the relationships and losses of four other adult siblings who neither testified nor appeared before the jury. On cross-examination, Cary acknowledged that he could

not meaningfully distinguish one sibling's relationship with Vernon from another. TLC also emphasized the limited contemporaneous corroboration of the asserted adult relationships. (DE 228 at 1–6.) The Court does not regard photographs as a legal prerequisite to recovery; testimony is evidence, and a wrongful-death claim does not fail for want of photographs. But the quantity and quality of corroboration, the generalized nature of the testimony, and the absence of testimony from the beneficiaries whose individual losses were being claimed were all matters legitimately bearing on weight.

Having independently weighed the evidence and considered the credibility issues developed at trial, the Court concludes that the zero-dollar finding is not against the *clear* weight of the evidence. Plaintiff's proof was sufficient to support a monetary award, but in the Court's assessment, the generalized nature of the proof and the beneficiary-specific weaknesses discussed above prevent the contrary verdict from being against the *clear* weight. This conclusion respects both sides of *Nelson*: adult siblings may recover when the evidence proves the requisite relationship and loss, but the law supplies no *presumption* that converts the fact of siblinghood into damages. On this record, the zero-dollar verdict likewise does not produce a miscarriage of justice.

### 3.    Nominal damages do not require a new trial.

Plaintiff argues in reply that, at minimum, nominal damages should have been awarded. (DE 229 at 5.) That argument warrants separate consideration because nominal damages were not wholly absent from the trial. Plaintiff's own proposed

9

punitive-damages charge stated that punitive damages required an award of actual or nominal damages. The Court's final charge substantially included that proposition. The Court twice told the jury that punitive damages could not be awarded unless the jury first awarded actual or nominal damages. (DE 212 at 13–14.) The verdict form likewise asked for the amount of damages, "if any," and did not make a nominal award mechanically impossible. (DE 214.)

What neither Plaintiff's proposed wrongful-death charge nor the final charge supplied was a definition of nominal damages or an instruction identifying circumstances in which nominal damages would be available or mandatory. Plaintiff did not request an instruction directing the jury to award nominal damages if it found no actual beneficiary loss, did not propose a separate nominal damages interrogatory, and did not object on that ground before the jury retired. To the extent the present motion depends on that additional instructional proposition, the issue was not preserved under Rule 51(d)(1). It may, therefore, be considered, at most, for plain error affecting substantial rights. *See* Fed. R. Civ. P. 51(d)(2); *see also Gentry v. East West Partners Club Management Co. Inc.*, 816 F.3d 228, 237 (4th Cir. 2016).

The Court finds no plain error. Indeed, under the division of issues described above, Plaintiff has not shown that the absence of a fuller nominal-damages instruction was error. *Stevens* does not hold that nominal damages are mandatory whenever negligence and causation of death have been established. Rather, it addresses the inconsistency of a verdict that finds complete negligence liability, including injury proximately caused, yet awards zero damages; and it directs

10

resubmission upon timely request, with a nominal-damages instruction if requested. 536 S.E.2d at 666. *Pratt* further confirms that wrongful death recovery may fail on the damages element even when breach and proximate cause have been found. 912 S.E.2d at 281. Here, the remaining question was whether the statutory beneficiaries proved compensable loss, and the jury was expressly told that no damages were presumed from the sibling relationship. *Uzuegbunam v. Preczewski*, 592 U.S. 279 (2021), which Plaintiff also relies on, recognizes the historic redress supplied by nominal damages for a completed violation of a legal right, but it does not define the substantive elements of a South Carolina wrongful death claim or require a nominal award where the state law beneficiary injury remains unproved.

Nor does the nominal damages issue alter the punitive result. South Carolina recognizes that an award of actual or nominal damages may supply the predicate for punitive damages. *See McGee v. Bruce Hosp. Sys.*, 545 S.E.2d 286 (S.C. 2001). But this jury did not stop after entering zero on the first question. It separately considered the heightened culpability question and expressly found that Plaintiff had not proved recklessness, willfulness, or wantonness by clear and convincing evidence. Thus, even if the jury had entered a nominal award, its independent answer to Question 2 would still foreclose punitive damages on this verdict.

    4.    **The accord-and-satisfaction evidence does not supply an independent Rule 59 ground.**

Plaintiff's opening motion suggested that the jury may have been influenced by TLC's accord-and-satisfaction theory and characterized aspects of that presentation as false. (DE 227 at 15–16.) Plaintiff's reply then clarified that he was

11

not relying on the presentation of that defense as an independent basis for a new trial but was addressing what evidence should be permitted if a retrial were ordered. (DE 229 at 9–11.) The Court accepts that clarification.

In any event, the record does not establish that the verdict was based on false evidence. The Covenant itself was an authentic agreement. The legal contention TLC drew from it was later rejected as a matter of law. The Court then expressly instructed the jury that the Covenant was not an accord and satisfaction and was not a defense. (DE 212; DE 218.) Nothing in the verdict demonstrates that the jury disregarded that instruction, and the zero-dollar finding is independently reconcilable with the evidentiary weaknesses discussed above. The false-evidence prong of Rule 59, therefore, does not warrant relief.

TLC separately contends that Plaintiff forfeited certain challenges by failing to object to the verdict before the jury was discharged and by assenting to the "if any" formulation used in the instructions and verdict form. Plaintiff responds that he is challenging the weight and adequacy of the verdict rather than asserting an internally inconsistent multi-answer verdict, and he relies in part on *Figg v. Schroeder*, 312 F.3d 625, 644 (4th Cir. 2002). Because the Court concludes that the verdict is reconcilable and that the Rule 59 motion fails on its merits, the Court need not resolve TLC's broader preservation argument. The specific unpreserved nominal damages instructional theory is addressed under Rule 51 above.

**B.     Punitive Damages**

Plaintiff also seeks a new trial on punitive damages. The verdict must be described precisely. The jury did not award zero dollars in punitive damages; it never reached the amount question. Instead, it answered "No" when asked whether Plaintiff had proved by clear and convincing evidence that Bonner acted in a reckless, willful, or wanton manner in causing Mr. Parker's wrongful death. (DE 214.) The Rule 59 issue is, therefore, whether that factual finding is against the clear weight of the evidence or based on false evidence, not whether a particular punitive amount is a miscarriage of justice. *See Atlas Food*, 99 F.3d at 594.

Under South Carolina law, punitive damages require proof by clear and convincing evidence that the defendant's conduct was willful, wanton, or in reckless disregard of another's rights. *See* S.C. Code Ann. § 15-33-135; *see also Gurwood v. GCA Services Group, Inc.*, 914 S.E.2d 149, 153–55 (S.C 2025) (discussing the statutory clear-and-convincing standard and its role in evaluating the sufficiency of a punitive-damages claim). A causative violation of an applicable safety statute constitutes negligence per se and is evidence of recklessness and willfulness. *See Wise v. Broadway*, 433 S.E.2d 857, 859 (S.C. 1993); *see also Fairchild v. S.C. Dep't of Transp.*, 727 S.E.2d 407, 411–13 (S.C. 2012). But a statutory violation is not recklessness per se, and the jury is not obligated to make the heightened finding in every case involving a statutory violation. *See Wise*, 433 S.E.2d at 859; *see also Fairchild*, 727 S.E.2d at 411–12. Thus, the Court's prior negligence per se ruling

13

furnished evidence supporting Plaintiff's punitive theory; it did not determine heightened culpability as a matter of law.

Plaintiff presented substantial evidence supporting his punitive theory. The jury heard evidence concerning Bonner's speed, his use of cruise control, his lookout, his movement into the opposing lane immediately before impact, and aspects of his prior driving history. Plaintiff also emphasizes Bonner's affirmative response when counsel asked whether the described combination of speeding, cruise control, and failure to keep a proper lookout would be reckless. (DE 227 at 7–8.) That testimony was properly available for the jury to consider.

The evidence nevertheless did not compel a finding of recklessness by clear and convincing evidence. Bonner's affirmative answer to counsel's characterization of the combination of speeding, cruise control, and inadequate lookout was evidence for the jury to weigh, but it did not decide the ultimate issue. The jury also heard Bonner's testimony concerning what he was observing immediately before the collision and his failure to recall the warning sign emphasized by Plaintiff, as well as evidence concerning his prior driving history. The Court does not minimize that evidence. Under *Wise* and *Fairchild*, however, even a causative statutory violation does not compel a finding of recklessness. Considering the whole record, the evidence of negligence and negligence per se did not make the heightened culpability finding so compelling that the jury's contrary answer was against the clear weight of the evidence.

The Court has independently weighed that record rather than merely asking whether some evidence supports the verdict. Given the clear-and-convincing burden, the Court concludes that the jury's negative answer on punitive culpability is not against the clear weight of the evidence. Nor is there a basis to conclude that the finding rested on false evidence. The Court's earlier determination that Plaintiff had made a prima facie showing sufficient to submit punitive damages to the jury (DE 137) established only that the question could be tried; it did not remove that question from the jury or lower Plaintiff's burden of proof.

Finally, the Court does not deny punitive relief merely because the jury awarded no actual damages. As *McGee* explains, South Carolina permits actual or nominal damages to supply the predicate for punitive damages when liability is otherwise established. 545 S.E.2d 286. The dispositive point here is independent: this jury considered the punitive-liability question and found that the required culpability had not been proved. That finding survives Rule 59 review. A new trial on punitive damages is therefore not warranted.

## IV.    CONCLUSION

Plaintiff presented evidence from which a jury could have awarded compensatory damages, and the Court does not characterize that evidence as a complete failure of proof. But compensable loss to the adult sibling beneficiaries was not established by the Court's pretrial rulings and was not presumed under South Carolina law. After independently weighing the full trial record, including the affirmative evidence of the siblings' relationship and grief and the weaknesses

15

developed in Plaintiff's beneficiary-specific proof, the Court does not find the zero-dollar compensatory verdict against the clear weight of the evidence, based on false evidence, or productive of a miscarriage of justice. The nominal damages argument does not alter that conclusion, and the jury's separate rejection of reckless, willful, or wanton conduct by clear and convincing evidence likewise withstands Rule 59 review.

Accordingly, Plaintiff's Motion for a New Trial on Actual and Punitive Damages (DE 227) is **DENIED**.

**IT IS SO ORDERED**.

Joseph Dawson, III
United States District Judge

Florence, South Carolina
August 11, 2026